UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Zen L.,

    Plaintiff,

v.

Nancy A. Berryhill, Acting
Commissioner of Social Security,

    Defendant.

No. 17 CV 50289

Magistrate Judge Iain D. Johnston

## MEMORANDUM OPINION AND ORDER

This appeal should never have been filed. It borders on frivolous. Currently, the Western Division of the U.S. District Court for the Northern District of Illinois is one of the busiest courts in the country. And Social Security appeals now comprise about a quarter of the civil docket. This Court should not be burdened – and other litigants awaiting rulings should not be delayed – by appeals that fundamentally lack merit. This Court has previously warned against filing meritless Social Security appeals. *Martinez v. Colvin*, No. 12 CV 50016, 2014 U.S. Dist. LEXIS 41754, *28-29 (N.D. Ill. Mar. 28, 2014). And today it does so again. The Court anticipates all counsel will use their best professional judgment before filing and litigating Social Security appeals. This Court had previously counseled the government to more carefully analyze those cases it chose to litigate. *Koelling v. Colvin*, No. 14 CV 50018, 2015 U.S. Dist. LEXIS 140754, *21, n. 6 (N.D. Ill. Oct. 16, 2015). Because of the number of voluntary remands, it appears the government received the message. The Court hopes that claimants' counsel do so as well. The following analysis makes plain why this appeal should never have been filed and litigated.

1

Plaintiff moved to the United States from Myanmar, becoming a legal permanent resident in 2010. Since arriving in this country, she has not worked for pay. Her native language is Burmese and she can only speak or understand English "a little bit." R. 33. In 2015, she applied for Title XVI benefits alleging she was disabled due to a long-existing left hand injury and dizziness from a brain angioma. The administrative law judge ruled that plaintiff was capable of doing light work. Plaintiff does not challenge the finding that her dizziness was not a barrier to working. The case thus only concerns the hand injury. Plaintiff argues that the ALJ minimized her hand limitations primarily by wrongly concluding that a 2016 surgery corrected most of her problems. Plaintiff also argues that the Appeals Council erred in not remanding the case based on photographs, taken after the ALJ's decision, allegedly showing that the hand was so obviously disfigured that anyone would conclude that she could not work.

**BACKGROUND**

The left hand problem began sometime in 2004. Plaintiff underwent a number of surgeries over the ensuing years (including a 2005 surgery in Myanmar and a 2008 surgery in neighboring India) to correct the problem. But despite the surgeries, plaintiff continued to have deformity, pain, swelling, mass, and limitations in some of her fingers.

After moving to the United States, plaintiff did not seek any treatment for her hand until January 2016 when she began seeing Dr. Edric Schwartz in Rockford. Over the course of several visits, Dr. Schwartz examined plaintiff, performed a biopsy, took x-rays, ordered an MRI, and then recommended surgery, which was performed on March 15, 2016. Plaintiff returned to Dr. Schwartz's office for a series of follow-up visits. In the last visit, on May 16, 2016, plaintiff reported that her symptoms had "significantly improved" and that she was "pleased with the results." R. 343. These notes state that plaintiff was released to work "[f]ull duty, no

2

restrictions." *Id.* No further visits or treatments were scheduled. These notes were signed by Cory Belnap, a physician's assistant, who attended the surgery and assisted Dr. Schwartz in plaintiff's treatment. These notes—and particularly the statement therein that plaintiff had no work restrictions—are the key piece of evidence the ALJ relied on.[1]

Another prominent piece of evidence, albeit a more equivocal one, was the report from Dr. Ramchandani, the consultative examiner. He examined plaintiff in June 2015. Both sides claim that parts of this report support their position. Rather than providing a shorthand summary, the Court will quote the relevant findings, which are the following:

> PHYSICAL EXAMINATION: [] She is left-handed with a grip of 4/5 on the right and 3/5 on the left. She is able to make a fist, pick up objects, open and close the door, oppose the thumb to fingers, and flip pages bilaterally, though in a clumsy fashion and with effort on the left.
>
> \* \* \*
>
> CNS EXAMINATION: [] Motor System: Power is 5/5 with normal tone and muscle mass in all 4 extremities except the left wrist where power is 3+ to 4/5, reduced tone at the left wrist, slight wasting of left hypothenar eminence. The left forearm is smaller than the right by 3/4". Sensory system: Intact to touch and pin prick in all 4 extremities.
>
> \* \* \*
>
> IMPRESSION:
> 1. Post-surgical deformities of left 4th and 5th fingers.
> 2. Lateral epicondylitis of right elbow.
> 3. Vertigo secondary to cavernous angioma of mid brain and right paramedian pons.
> 4. Hepatitis C.

R. 296-97.

---

[1] One lurking question is whether this opinion came just from Cory Belnap, the physician's assistant who signed the notes, or whether it was also endorsed by Dr. Schwartz whose name is on the report. At the hearing, plaintiff's counsel referred to it as the doctor's opinion. In the ALJ's decision, he referred to it as Belnap's opinion, as do the parties in their briefs. However, neither side has argued that analysis should differ depending on the precise authorship of the opinion. Given these uncertainties, the Court will refer to the opinion as being that of "Dr. Schwartz's office."

The third source of medical information about plaintiff's hand are medical records from India covering plaintiff's treatment there in 2008. Ex. 1F. In her briefs, plaintiff refers to a few findings from these records. Overall, the medical record (at 393 pages) is relatively thin compared to the typical case and even smaller when confined to the hand evidence. The India records are 34 pages; the Ramchandani report is 7 pages; and the Schwartz records are 40 pages.[2]

In September 2016, an administrative hearing was held. Plaintiff's counsel gave the following opening statement:

> ATTY: Briefly. The records from Rockford Orthopedic indicate that the doctor told Ms. Luan that she has no restrictions with the left hand, *but* if she'll hold up the hand for you now, you can see that her fingers are permanently contracted.

R. 31 (emphasis added). This statement, though short, nonetheless distilled the case down to two basic competing evidentiary arguments, ones that are still present in this appeal.

At the hearing, plaintiff testified through a videoconferencing system and with the assistance of an interpreter. Several times during the hearing plaintiff was asked to show her hand for the ALJ to see. The ALJ initially identified plaintiff's pinky and ring fingers (the fourth and fifth fingers) as the affected fingers, but plaintiff added that her middle finger (the third one) was also affected. Plaintiff testified that she could not do "anything" at all with her left hand, and stated that the most recent surgery had made her symptoms worse. R. 34, 38. She also claimed that Dr. Schwartz told her that she could not have any more surgeries because the remaining problems with the hand "cannot be fixed." *Id.* At the end of the hearing, counsel asked to give a closing statement in which she again returned to the opinion from Dr. Schwartz's office:

> I would just like to say that if you intend on giving Dr. Schwartz's statement, that there are not restrictions with the left hand, controlling weight, I would ask that you give us time to try to clarify that statement with the doctor because I firmly believe that he meant that there were no restrictions from the surgery, not—I don't think he

---
[2] There are also the State agency opinions, but neither side has relied on them in any material way.

> was speaking to anything that he didn't try to correct with the surgery. I think the surgery was just to remove a mass in the hand.

R. 45. The ALJ gave plaintiff two weeks and offered even more time if needed. Counsel indicated that two weeks would be sufficient, although she noted that "we've had some problems [communicating] with [Dr. Schwartz's office] in the past." *Id.*

Although several attempts were made to get an updated opinion, no such opinion was obtained. It does not appear that counsel informed the ALJ of this fact. On January 27, 2017, the ALJ issued an eight-page ruling. The ALJ gave "substantial weight" to the opinion from Dr. Schwartz's office. Thus, counsel's fear at the hearing that this opinion would be given controlling weight essentially came true. In addition to crediting the medical opinion, the ALJ also found that the March 2016 surgery had "demonstrably" and significantly improved the plaintiff's hand functioning. R. 17. The ALJ also noted that plaintiff herself had reported at the last visit with Dr. Schwartz that the surgery resulted in "significant improvement" and that tests conducted at that visit showed that she had, among other things, "normal strength and sensory function," although she did have "some diminished range of motion." *Id.* The ALJ noted that Dr. Ramchandani's observations indicated that plaintiff could use her hand to a greater extent than she claimed. The ALJ also noted that these observations were made before the surgery. *Id.*

Plaintiff filed an appeal to the Appeals Council. In her letter brief, she enclosed photographs of her hand that were taken after the ALJ's decision. The appeal was denied, and plaintiff then appealed to this Court. On January 31, 2018, the Appeals Council wrote a letter to plaintiff stating that it "now" had received the new photographs and that it found no reason to change its previous denial. On February 5, 2018, plaintiff added the letter and photographs to the record in this Court. There are five black and white photographs of plaintiff's hand from various angles. A month later, when plaintiff submitted her opening summary judgment brief, she

included a supplement with a new set of photographs that were described as "better quality versions" of the earlier photographs. Dkt. #15 at 12.[3]

### DISCUSSION

Although plaintiff raises a number of arguments for remand, they can be grouped into three primary contentions. First, the ALJ engaged in cherrypicking in describing the medical evidence. Second, the ALJ failed to consider counsel's argument at the hearing that the opinion from Dr. Schwartz's office was more limited than it seemed on its face. Third, the Appeals Council erred in not remanding based on the new photographs. The Court is not persuaded that these arguments provide a basis for second-guessing the ALJ's decision.

Plaintiff's cherrypicking argument suffers from several flaws that commonly beset such arguments. One is that plaintiff engages in her own form of cherrypicking. To cite one example, plaintiff criticizes the ALJ for not including in the summary of Dr. Ramchandani's findings that plaintiff had "wasting of the left hypothenar eminence." Dkt. #15 at 6. This is true, but plaintiff's description is selective in the other direction. Plaintiff left out that Dr. Ramchandani referred to this wasting as being only "slight" and did not list this in the concluding "Impression" section. R. 296. Another problem is that plaintiff engages in doctor playing by extracting technical findings and then using them to suggest larger diagnostic conclusions. For example, she notes that January 2016 MRI report included the terms "lesion" and "hemangioma" and then argues that they "*likely* indicate some vascular issues in the fingers." Dkt. #17 at 1 (emphasis added). It is not that plaintiff's speculations are necessarily wrong, but that they are not tied to a doctor's opinion or diagnosis. This leads to the biggest weakness in her cherrypicking argument, which is that it relies on findings from before the March 2016 surgery. As noted above, the ALJ viewed

---

[3] It appears that the new photographs are the same ones as before except that they are in color with better quality copying. The earlier photographs are fuzzy with a number of dark patches making them hard to see clearly.

that surgery as a pivotal point in the chronology. Implied in this finding is that the earlier medical evidence was essentially irrelevant.[4] Finally, as the Government argues, the cherrypicking examples cited by plaintiff were closer to articulation errors rather than substantive misunderstandings. Plaintiff's main gripe is that the ALJ referred several times to the hand problem as being a contracture of the 4th and 5th fingers, which plaintiff believes misleadingly omitted that the 3rd finger was also affected and that there was swelling and mass in addition to contracture. It is not clear that the ALJ was making a substantive distinction, as opposed to using a shorthand phrase to describe the general problem. Moreover, the phrase used by the ALJ was the same basic one used by Dr. Ramchandani. R. 297 ("Post-surgical deformities of left 4th and 5th fingers."). And plaintiff's counsel also used a similar phrasing in her letter briefs to the ALJ and Appeals Council. *See* R. 240 ("At some point, the claimant had surgery on the hand in Burma (we do not have access to those records) and the claimant ultimately was left with permanent problems with the hand, *namely flexion deformities in the fourth and fifth metatarsals and ring fingers*.") (emphasis added); R. 135 (same).

Plaintiff's second argument is more on point in that it addresses the key piece of evidence relied on by the ALJ. This is the opinion from Dr. Schwartz's office. Plaintiff faults the ALJ for failing to "acknowledge" the argument counsel made at the hearing—namely, that counsel "firmly believe[d]" that the Schwartz opinion was limited to only the aspects of plaintiff's hand problem that were fixed by the surgery and did not address other aspects that were not fixed by the surgery. Dkt.#15-9; R. 45. This main problem with this theory is that it is speculative. At the hearing, counsel implicitly recognized this weakness when she asked the ALJ for permission to submit an updated opinion from Dr. Schwartz that would "clarify" her theory and resolve the

---

[4] It is worth noting that, when Dr. Schwartz first saw plaintiff in January 2016, he declared that plaintiff's old medical records "essentially provide[d] no useful information." R. 370.

7

alleged ambiguity. But the simple fact remains—counsel was unable to get this clarification despite making multiple requests for one. It is not clear why Dr. Schwartz's office refused to provide one. Perhaps they were too busy, but another possible—and reasonable and most likely—inference is that they did not believe that the earlier opinion needed clarification. Plaintiff's theory about the allegedly limited scope of the opinion is not supported by any contextual statements from the treatment records. The notes from the last visit indicate that *plaintiff believed* that her surgery resulted in "significant improvement."[5] This statement flatly contradicts her later hearing testimony that the surgery *worsened* her hand problems. In sum, the Court cannot fault the ALJ for not explicitly addressing counsel's theory that the medical opinion should have been construed in a manner contrary to its plain language, which was that plaintiff could return to work with no restrictions. Obviously, the Court and the ALJ cannot ignore evidence simply because it is devastating to plaintiff's case, and plaintiff's counsel should know this. *Poremba v. Colvin*, No. 11 CV 50091, 2014 U.S. Dist. LEXIS 73, *49 (N.D. Ill. Jan. 2, 2014); *see Liar, Liar* https://www.imdb.com/title/tt0119528/characters/nm0076251.

This leads to plaintiff's third and somewhat novel argument relating to the photographs submitted to the Appeals Council. Plaintiff asserts that these photographs demonstrate that her hand was (in her words) "severely and obviously disfigured." Dkt. #15 at 10. Essentially, this is an eyeball test. Plaintiff is asserting that any person (layperson or doctor), after viewing these photographs, would conclude that she could not use her left hand to do light work.[6] The implication is that a photograph can trump the other medical evidence and opinions. This is a type of a *res ipsa loquitur* argument. At the outset, the argument is silly because it strangely

---

[5] The only complaints she made at this visit were that she had some pain in her fingers during the cold weather and when her hand was touched or bumped. R. 342.
[6] The specific occupations identified by the vocational expert were housekeeper, packer, and small parts assembler. It also should be noted that plaintiff's left hand was her dominant hand.

presumes that photographs of the hand are more probative than the video image of the hand that the ALJ observed at the hearing. Whether by photographs or video conferencing, the ALJ saw plaintiff's hand. Why the former would be more probative is left unsaid, probably because nothing could be said. Additionally, the Court is not persuaded by it for two primary reasons.

First, as a procedural matter, plaintiff faces the obvious question of why counsel did not submit the evidence earlier. The initial black and white photographs were submitted only after the ALJ's decision, and the better color photographs were submitted only after the Appeals Council's decision. In each instance, plaintiff came forward with this evidence only after receiving an adverse decision. This raises a concern about sandbagging. Plaintiff has explained that the photographs were not submitted earlier because counsel believed that "the ALJ could *presumably* see plaintiff's hand on the video screen at the hearing." Dkt. #15 at 12 (emphasis added). But plaintiff offers no evidence to support the implied argument that there are grounds to now doubt the assumption that the ALJ could adequately see plaintiff's hand through the videoconferencing system. Plaintiff held up her hand twice during the hearing for visual inspection. The ALJ gave no indication that he was having trouble viewing plaintiff's hand, and counsel likewise did not raise any doubts about whether this viewing process was adequate. It is thus not clear that the current photographs would provide the ALJ with a different or materially better "picture" than the one he saw through the videoconferencing.

Second, on a more substantive level, plaintiff's argument-by-picture raises a number of concerns, one of which is whether it improperly requires the ALJ (as well as this Court) to engage in an awkward layperson analysis. Even accepting plaintiff's premise that her hand is generally "disfigured," this does not answer the specific question of whether she would still able to do certain work tasks with this hand. Even more precisely, the issue is whether an ALJ could

rely on this type of evidence to essentially to overrule (or at least raise doubts about) the opinion of a treating physician. Plaintiff has not cited to case law authorizing this type of approach. It is important to remember that Dr. Schwartz and Cory Belnap saw plaintiff multiple times, performed strength and flexibility tests, and reviewed x-rays and MRIs, among other things. In short, no one could question that they got many up-close "pictures" of plaintiff's hand. Their opinion was based on all of the evidence—visual and otherwise. It is hard to believe that they would change their opinion based on these new photographs. And finally, ultimately, the argument is meritless. A slightly deformed hand does not result in a disability finding. Indeed, tellingly, a missing arm – even the dominant arm – does not. *See Jensen v. Colvin* No. 10 CV 50312, 2013 U.S. Dist. LEXIS 13542, *31-32 (N.D. Ill. Sept. 22, 2013) (possessing only one arm, even a non-dominant arm, does not by itself make a person disabled) *citing Jones v. Shalala*, 10 F. 3d 522, 526 (7th Cir. 1993) ("Claimants with the use of only one arm are not automatically entitled to disability benefits."). So, if missing an entire dominant arm does not necessarily result in a disability finding, a slightly deformed hand at the end of a functioning arm will not. For all these reasons, the Court finds that plaintiff's photographs, even putting aside their late submission, cannot be used to support a remand given that the ALJ relied on the opinion of a treating physician and that, as discussed above, plaintiff has not raised sufficient evidence to question the ALJ's reliance on that opinion.

## CONCLUSION

For all the above reasons, plaintiff's motion for summary judgment is denied, the Government's motion is granted, and the ALJ's decision is affirmed.

Date: January 29, 2019    By:    _____
                                  Iain D. Johnston
                                  United States Magistrate Judge